IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| FASHONNUS FOY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) 15-CV-1020 |
| BANTRY GROUP, d/b/a | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| ANDREW TILDEN, M.D., | ) |
| And TERRY ARROYO | ) |
| | ) |
| Defendants. | ) |

**OPINION**

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE.**

Defendants Andrew Tilden, M.D. ("Tilden") and Wexford Health Sources, Inc. ("Wexford") filed a Motion for Summary Judgment on April 1, 2016. Defendant Terry (Teresa) Arroyo ("Arroyo") filed a Motion for Summary Judgment on April 14, 2016. Plaintiff, proceeding pro se, filed Responses to Defendant Wexford and Tilden's Motion for Summary Judgment on July 5, 2016, and to Defendant Arroyo's Motion on August 16, 2016. Defendants Wexford and Tilden filed a Reply to Plaintiff's Response on July 18, 2016. For the reasons stated below, Defendants' Motions for Summary Judgment are GRANTED.

## I. Factual Background

Plaintiff is an inmate incarcerated in the Illinois Department of Corrections ("IDOC") at the Pontiac Correctional Center ("Pontiac"). (Doc. 41-1, p. 6-7). Wexford Health Sources is the contractual provider of health care to inmates housed at Pontiac. (Doc. 1, p. 1). On December 1, 2010, Plaintiff received and acknowledged his receipt of a set of partial dentures from the IDOC while incarcerated at Pontiac. (Doc. 41-1, p. 41-44). The receipt signed by Plaintiff contained the following language: "If a remake is necessary due to the offender's neglect the offender shall be charged the current laboratory fee for this service." Id. On October 23, 2013, Plaintiff dropped his dentures into the toilet and was unable to retrieve them. (Doc. 41-1, p. 31).

Plaintiff requested replacement dentures on October 23, 2013 and again on July 9, 2014. (Doc. 33-2, p. 2,3). On October 29, 2013, Dr. Mitchell, the dentist at Pontiac, informed Plaintiff of the $260 lab cost that would be required to replace dentures unless Plaintiff was found to be indigent. (Doc. 41-13, p. 2). Between February 23 and February 26, 2014, Plaintiff received $511.05 in gifts from family and friends. (Doc. 41-15, p. 1). In February and

March of 2014, Plaintiff spent $369.47 on items through the commissary.

On September 23, 2014, Plaintiff filed an offender's grievance complaining about Wexford Health Sources' policy "requiring inmates to pay or [agree] to pay lab cost in full before receiving a second set of [dentures]." (Doc. 1, p. 17). On October 8, 2014, Plaintiff was notified in writing that he was approved for a new set of dentures but he would be required pay the $260.00 lab fee. (Doc. 1, p. 16).

On October 8, 2014, Plaintiff had only $39.59 in his trust fund account. However, between that date and March 27, 2015, Plaintiff received monetary gifts totaling $672.71. (Doc. 41-15, p. 2-4). In the same time period, Plaintiff earned $190.08 in payroll for work done at Pontiac. Id.

Defendant Wexford's "Removable Prosthetics" policy indicates that "partial dentures will not be made more frequently than every five (5) years and only when clinically necessary." (Doc. 50, p. 62). However, Wexford's policy does not address what actions will be taken to replace dentures that have been lost or damaged. Id. An

IDOC policy, effective as of September 1, 2002, does address replacing lost or damaged dentures. (Doc. 41-14, p. 10).

> Offenders who have lost or broken a dental prosthetic through negligence shall be required to pay the dental laboratory fee for replacement. The offender shall be required to sign a Request for Payment, DC828, authorizing the deduction of the payment from present *or future funds* in his or her trust fund account.

Administrative Directive 04.03.102(II)(F)(6)(b) (emphasis added). An Illinois statute also allows for inmates to be charged for expenses incurred during their incarceration. 730 ILCS 5/3-7-6(a) ("Committed persons shall be responsible to reimburse the Department [of Corrections] for the expenses incurred by their incarceration").

Although Wexford maintains its own set of policies and customs, IDOC policies cannot be set aside by Wexford or its employees. Slater v. Butler, No. 11-752-GPM, 2012 U.S. Dist. LEXIS 47685 (S.D. Ill. Apr. 4, 2012) (Holding that "Wexford employees[] have no authority to waive IDOC statutes [730 ILCS 5/3-6-2(f) and Ill. Admin. Code tit. 20, § 415.30(g)] and regulations governing the co-pay that non-indigent IDOC prisoners must pay for non-emergency medical care").

On January 16, 2015, Plaintiff filed a complaint alleging that Defendants were deliberately indifferent to Plaintiff's serious medical needs by failing to provide him with replacement dentures after his dentures were lost. (Doc. 1). Defendants Wexford, Tilden, and Arroyo then filed Motions for Summary Judgment. (Doc. 41, 44).

## II.  Summary Judgment Standard

Under Federal Rules of Civil Procedure Rule 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden to prove that no genuine dispute as to the material facts exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Only material facts, which are those "that might affect the outcome of the suit under the governing law[,] will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id., *at* 252.

"Once the moving party satisfies this burden, the nonmovant must 'set forth specific facts showing that there is a genuine issue for trial.'" Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001) (*quoting* Fed. R. Civ. P. 56(e)). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996); *see also* Newkirk, at 837.

In considering a Motion for Summary Judgment, the Court will draw all inferences from "facts contained in the affidavits, attached exhibits, and depositions . . . in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. Discussion

While the Eighth Amendment guarantees that inmates shall receive necessary medical care, the Eighth Amendment does not guarantee free medical care. *See* Martin v. DeBruyn, 880 F. Supp. 610, 615 (N.D. Ind. 1995) *aff'd*, 116 F.3d 1482 (7th Cir. 1997)("[the] principle ['that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself'] does not forbid a state from requiring that an inmate pay for his

medical treatment to the extent he is able to do so, as he would have to do were he not deprived of his liberty." (*quoting* Estelle v. Gamble, 429 U.S. at 103-104)); Clark v. Doe, No. 98-2109, 1999 U.S. App. LEXIS 28515, *6 (7th Cir. 1999)(upholding a $1,700.00 medical bill for treatment of an inmate's fractured eye socket). Inmates may be charged for medical treatment so long as that medical treatment is not withheld pending payment. Davis v. Walker, No. 06-4050, 2006 U.S. Dist. LEXIS 60604, *3 (C.D. Ill. Aug. 25, 2006). Withholding treatment for want of payment is a violation of an inmate's constitutional rights. Moralis v. Flageole, No. 06 C 2034, 2007 U.S. Dist. LEXIS 72645, *49-50 (C.D. Ill. Sep. 28, 2007) (citing Martin v. DeBruyn, 880 F.Supp. 610, 615 (N.D.Ind. 1995), aff'd, 116 F.3d 1482 (7th Cir. 1997))("a prison official who withholds necessary medical care, for want of payment, from an inmate *who could not pay* would violate the inmate's constitutional rights" (*emphasis added*)).

The policy in place at Pontiac allows for the replacement of dentures that have been lost or damaged due to the negligence of an inmate so long as the inmate pays the associated lab cost. *See* Administrative Directive 04.03.102(II)(F)(6)(b). The lab cost can be

deducted from present or future funds in an inmate's trust fund account. Plaintiff has offered no evidence to suggest that anyone at Pontiac, much less the officials named in his complaint, indicated that Plaintiff's receipt of new dentures would require that he tender payment *before* receiving the replacement dentures. In fact, Plaintiff indicated in his September 23, 2014, grievance that Wexford's policy required that an inmate pay *or agree to pay* before receiving new dentures.

Plaintiff was told that he would be required to pay for replacement dentures. Plaintiff may have been unable to pay the $260 lab fee on October 29, 2013, the day he was first informed that he would be required to pay to replace his dentures. However, the record does not indicate his trust fund account balance on that day. However, if Plaintiff had *agreed* to pay for the new set of dentures (as his September 23, 2014, grievance indicates he knew was an option) and have the cost deducted later, he clearly could have afforded the lab fee. Four months after Plaintiff was first informed by Dr. Mitchell that he would need to pay to replace his dentures, he received $511.05 in gifts from family and friends. In the six months after October 8, 2014, when Plaintiff was notified in

writing that he was approved for replacement dentures, he received over $600 in gifts from family and friends.

Plaintiff could have afforded to pay the lab fee associated with replacing his dentures. In fact, in the two months after Plaintiff was notified in writing that he was approved for replacement dentures, he spent $196.97 on items purchased through the commissary. Plaintiff indicated in his deposition he merely objected to being required to pay to replace his dentures. (Doc. 41-1, p. 35).

This policy of charging inmates for replacing dentures is constitutional. See Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997) ("The deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society"). Therefore, Plaintiff's claim that he was denied dentures because he could not pay for them is not supported by evidence, and his claim challenging the denture replacement policy fails as a matter of law.

Plaintiff's arguments regarding Dr. Mitchell's alleged lack of dental care and Plaintiff's requests to be sent to the UIC Medical Center for dental care are not relevant to the claims in this case.

Dr. Mitchell is not a Defendant in this case. The claim in this case is about the replacement of Plaintiff's dentures.

## IV. Conclusion

For the foregoing reasons, Defendants have shown that no genuine dispute as to the material facts of this case is present. Therefore, Defendants Wexford, Tilden, and Arroyo are entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED:**

(1) Defendants Andrew Tilden, M.D., and Wexford Health Sources, Inc.'s Motion for Summary Judgment Is GRANTED (41).

(2) Defendant Terry (Teresa) Arroyo's Motion for Summary Judgment is GRANTED (43).

(3) The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. This case is closed.

(4) Defendants may file a motion for costs within the time allotted by local rule. If Plaintiff objects to the assessment of costs against him on the grounds of indigency, he must attach his trust fund ledgers for the past 12 months to those objections.

(5) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of

judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal.  See Fed. R. App. P. 24(a)(1)(c).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTER:  September 19, 2016

FOR THE COURT:

                                          **s/Sue E. Myerscough**
                                            SUE E. MYERSCOUGH
                                  UNITED STATES DISTRICT JUDGE